## HIGUERA v. DEL PONTE et al.

Court of Appeal, First District; December 28, 1906.

88 Pac. 808.

Water Rights—Prescription.—In an Action to Quiet Title to certain land, evidence held sufficient to sustain a finding that defendants had acquired a prescriptive right to the use of waters of a spring located on plaintiff's land and flowing through a pipe to the land belonging to defendants.

APPEAL from Superior Court, Santa Clara County; M. H. Hyland, Judge.

Action by Bernardo Higuera against David Del Ponte and others. From a judgment in favor of defendants Del Ponte and another, and from an order denying plaintiff's motion for a new trial, he appeals. Affirmed.

Charles Clark for appellant; W. H. Johnson for respondents.

HALL, J.—Appeal from judgment in favor of defendants Del Ponte and Persico, and from the order denying plaintiff's motion for a new trial.

The action is in form an action to quiet title to a tract of land described as "lot seven (7) of the Higuera Rancho," but, as appears from the answer of defendants Del Ponte and Persico, and from the statement on motion for new trial, the only real controversy in the case was as to the ownership of certain water flowing from a spring on lot 7 of said rancho, through an iron pipe, to lot 4 of said rancho, and the right of way therefor. Defendants pleaded that they were the owners of said water, water right, and right of way, and specially pleaded "that for more than five years prior to the commencement of this action they and their grantors have been in the open, notorious, continuous, peaceful, uninterrupted use and occupation of all that part or portion of said water flowing from the said spring on said lot seven of said Higuera Rancho, and to the said lot four of said Higuera Rancho; that the said use and occupation of said water as aforesaid has been for all of said time hostile and adverse to any claim of all persons, and that the said water had been so used by the said defendants and their grantors with the full knowledge of the said plaintiff." The court found the facts in accordance with the plea of the prescriptive right thus set up, and gave judgment accordingly. Appellant attacks the sufficiency of the evidence to sustain this finding.

This action was commenced July 21, 1903. The Higuera Rancho, prior to her death, belonged to the mother of plaintiff. In 1886 she caused a pipe to be laid from a spring situate on lot 7, now the property of plaintiff, to lot 4, now the property of defendants, for the purpose of conveying water to the family dwelling, which was situate on the portion of the rancho now known as "lot 4." From that time

until the commencement of this action it is perfectly clear that the pipe has remained and water has run through it and been used by the various and successive owners of that portion of the rancho (lot 4), for irrigating an orchard and the usual domestic purposes. Mrs. Higuera died in 1889. October 8, 1891, as the result of a suit in partition, a decree of partition was rendered by the superior court of Santa Clara county, in which lot 7 of said rancho was awarded to plaintiff herein, and lot 4 to Martin Higuera, a brother of plaintiff, who died before the trial of this action. The only reference to water rights in the said decree is in these words: "And it was then and there in open court agreed by all the parties having interests in said land and premises that said Bernardo Higuera should have the ownership and exclusive use of the two springs of water nearest his house on said land."

Both parties introduced evidence to show whether or not the spring that is the subject of this controversy was one of the two springs referred to in this decree. While plaintiff and several of his relatives testified that the spring from which the iron pipe leads was one of two nearest Bernardo's house, and was intended to be reserved to Bernardo, other witnesses testified that there were at least two other springs nearer said house than the one in controversy. Indeed, counsel for appellant concedes that on this point the evidence is conflicting, but the point seems to be of little or no importance as to the prescriptive right pleaded by defendants. The fact is, as abundantly appears from the record, that Martin Higuera and the successive owners of lot 4 continued to use the water flowing from said spring through said pipe openly and with full knowledge of plaintiff and of all persons in interest. It is claimed, however, that the use has not been uninterrupted, and has not been adverse. But upon these points we think the evidence was of such a nature as to warrant the court in finding that for more than five years before the commencement of the action the use had been continuous and adverse. While the evidence shows that there was a stop-cock in the pipe near the spring, no witness was produced that ever turned off the water, either by the stop-cock or by any other means. There was no cock or other means of stopping the flow of the water at the outlet of the pipe on lot 4. The plaintiff was himself

a witness, and his testimony as to any stopping of the flow of water through the pipe is not at all clear or satisfactory. He testified that the portion of lot 7 where the spring in question is situated has been in the actual possession of his tenant, Mrs. Mesa. On his direct examination he said that there is a stop-cock in the pipe near the spring, and it would stop the flow of the water when it was turned, but he did not say that it had ever been turned. He did say that Mrs. Mesa had been using the water to irrigate nine or ten acres of lot 7, but on his cross-examination he said that the water used by Mrs. Mesa for irrigation was the overflow, "the water used for irrigating lot seven is where Mrs. Mesa lives. It is an overflow when the pipe is full. Q. Just what escapes from the overflow when the spring is full? A. Yes, sir." Continuing, he said: "This water runs continuously, and has not been stopped off since the pipe was put in. Was used by my mother for the purpose of getting water for family use in the house." On redirect examination he modified what he had said about the water running through the pipe continuously, and said: "When Mrs. Mesa and I wanted water for that nine or ten acres we would stop it. We let the water run until we wanted to use it, and then would shut it off." But on recross-examination he said: "I did not stop the water off. My tenant, Mrs. Mesa, stopped it. Q. How do you know that Mrs. Mesa stopped it? A. Well, they told me they wanted the water there to irrigate." Mrs. Mesa was not called as a witness, nor was anyone else who ever stopped the flow of water through the pipe. One Flavio Sargarda was also a witness for plaintiff, and appears to have been on the premises (lot 4) and in charge thereof for the owners (Severances) for two years and over immediately preceding the purchase thereof by defendants. Although it appears that plaintiff once spoke to him about the water while the Severances owned the premises (lot 4) and wanted to stop the water, he did not stop it.

Evidence was also given by the defendants to the effect that after their purchase of lot 4 plaintiff applied to them to put in a faucet at the house on lot 4 so that so much water would not be wasted. He asked it as a favor to Mrs. Mesa. This seems inconsistent with his present claim that he had the right to shut off the water from lot 4 at his pleasure.

From the whole record we are of the opinion that there is sufficient evidence to support the finding of the facts supporting a prescriptive right in the owners of lot 4 to the use of the waters that flow through the pipe.

The decree does not award to defendants all the waters of the spring in question, but only such as flows through the pipe.

The judgment and order are affirmed.

We concur: Harrison, P. J.; Cooper, J.